Judge i wsur
delivered the opinion.
In 1788 Conrad Humble purchased from John Hinkson three hundred acres of land, pari of Silas Trains settlement, paid the purchase monet, and received from Fmk-son an obligation to nmke a good and sufficient deed as soon after as Hinkson might or could obtain a title from a certain George Wilson.
Under his purchase. Humble took possession of the land, and lie and bis heirs and devisees continued in possession thereof, until they were served with a declaration in ejectment at the suit of a certain John Martin, who claimed the land under an adverse title, junior in dale to the patent which issued to the heir of Train.
To the action of ejectment no defence was made by the heirs and devisees of Humble, and judgment was takes against the casual ejector by default, in 1808.
The heirs and devisees of Humble then exhibited their bill in equity against the heirs of Hinkson, charging, that at the time the decedent Humble purchased the land, Hinkson had no title, nor the means of procuring one ‘ that through his false and fraudulent misrepresentations, Humble was prevailed on to make the purchase ; that neither Hinkson, the ancestor, nor his heirs since, have ever procured a title from the heir of Train, and are now unable to comply with the obligation to Conrad Humble ; and alledgiug ihat they have been evicted from the land by Martin, and ask a remission of the contract of purchase made by Conrad Humble from John Hinkson. They moreover charge, that the heirs of Hinkson have reeeived by descent landed estate to a considerable amount, aud also that thev have received personal estate to an amount greater than the purchase money for the land. They also *469 alledgc that there is no administration of the estate Hinkson, and pray for compensation against the heirs, &c.
A purchase*, of lands, by bond> one having n& titls, may resort, after of^tfme^ei36 ihe.no law, for cooipen-*a*int ’ forla d?ssoiution 8 of the con-ri^diet^'n concurrent1*
*469 The heirs of Hinkson admit the sale made by their ancestor to Humble; dent, that any fraud was committed by him in the sale; allege, that, although he had no title, that circumstance was known to Humble, when he made the purchase, and insist, that the contract was made in good faith, and with an honest intention to make the title as soon as one could be procured from George Wilsop, with whom Hinkson, their ancestor, liad previously contracted for the land. The heirs also admit the commencement of the ejectment by Martin; but allege, that Martin’^ claim is junior in date, to that of Train; and insist, that the recover) by Martin was collusive and fraudulent; and deny, that the htirs and devisees of Humble have, in fact, been evicted from the land; and they contend that, if the contract is cancelled, the possession of the land should be restored to then , nefore any compensation should be made to the heirs and devisees of Humble. Some of the heirs admit they have received personal estate to an amount named, and otlors deny the receipt of any; and it is nut denied but real estate has descended to them by their ancestor, &c.
On a final hearing, the circuit court pronounced a decree, cancelling the contract; and, without directing the land to be restored to the heirs of Hinkson, decreed the purchase money, with interest, to be paid the complainants; and directed that, in that payment, each of the heirs of Hinkson should contribute the amount by him received, of ihe personal estate, and the residue to be levied by cle-git. out of the land descended from their ancestor.
From that decree, the heirs have appealed.
There is certainly no ground for the charge of fraud against Hinkson in making the sale of the land. He appears not te have had the legal title to the land, but that circurhstance was known to Humble; and, from the depositions and exhibits in the cause, it is obvious, that when he sold the land he was under an honest conviction, that lie would be enabled to obtain the title, and intended to comply with his obligation to Humble. Neither Hinkson nor bis heirs appears, however, to have obtained a title to any part of the seiilement of Train, and after a failure for such a lapse of lime as has intervened since the date p .i r* i oi the contract, we apprehend, it was competent lor the *470 heirs and devisees of Humble to abandon all advantage ^rom ’^e contract? afid apply to the chancellor for a recission of the contract, and to be compel sated for the purchase money.
deIf ltie,yen* to^qony for a oncelment of the cont’ct iraf Utnds° eorni’np by descent to theven'torls not subject, in his han.is, *’/has111®! 6 neV tho’Tli'e b’r. be bound m the bond, nombro’"1 on the bond but for the pur-cing the par ties* in ttatn quoy and because the lands of the obligo!* eou’d not be subjected (from the date of the contract) so neither can the)' he in the hands of the L’r unless s’l be bo’c on the bond.
It, as was contended in argument, Hinkson might have obtained a title to the land, under his covenant to make a title as soon as he might or could obtain one, the heirs of Humble raight, no doubt, have sustained an action against Hinkson’s representatives at law; but their having a light to sue at law, furnishes no objection to their applying to a cour* c^” e*Il,ity' For ss each court possesses jurisdiction the subject matter; the court of equity to cancel the contract; and the court of law to give compensation fora breach of the contract; it was at the election of Humble’s rei,resen,ai'ves to resort for relief to either,
But, admitting the propriety of the application to a court of equity, we apprehend, the land which has descended ^ron> Hinkson, cannot be made chargable in the bands of his heirs. As his heirs are specially boundún the obligation to Humble, they would be liable in an action on the ^0|1£4 but relief is not sought in equity on the bond, but its canceiment is demanded, and compensation claimed on the ground of its being proper for the court, on cancelling !'ie c'ntrac', t0 restore the parlies to the sifuatiou they v',<‘re ⅛ when the contract was made. On cancelling the contract, therefore, the only liability which Hinkson, if living, could be under, would arise from having received *be sale money, and as that was received prior to 1792, it can have imposed no obligation on his heirs. As Hink-son, if living, would, on the contract being cancelled, be conHPene<I to refund the sale money with interest, his personal estate is no doubt liahle, and as there is no executor or administrator against whom suit can be brought, it was competent for the heirs of Humble to pursue the personal properly in the handsof Hinkson’s heirs. Bui as it is in consequence of the heirs of Hinkson having received the personal estate, and not from any contract of their ancestor, that they can be charged in this contest, the extent of recovery against them ought not to exceed the amount of persona! esiate received by them.
But before they are made liable to that extent, we suppose, that the heirs of Humbie should be compelled to restore the possession to them of the land which was purchased from their ancestor. For, unless that is done, they *471 Will not be restored to the situation which they would have been in, if no contract or sale haJ been made by their ancestor; and it is a general rule, that a court of equity will not lend its aid in setting aside a contract, without requir-tngof the complainant to place bis adversary in statu quo. To this general rule, it is true, there may be exceptions; but the case now under consideration, is not of that char acter. The only circumstance relied on in argument, taking this case out of the general rule, is that of the heirs of Humble having been evicted from the land by the adverse claim of Martin. _ _
sett‘nfi tract for the sale of lands wnere pos-‘l0 vendee, tiie parties she’d ^1” ,„⅛ the p isses-«ion restored t|,e operation the decree t!le ev;cte<i id:r a bona recovery,
When per-assets the heirs,the personal" es-he
_ _ But the answer of Hinkson’s heirs allege the eviction to have been collusively attained, and expressly deny that Humble’s heirs were evicted from the whole of the land purchased by their ancestor; and there is no proof in the cause conducing to shew the extent of the eviction: sides, it is manifest, from Humble’s heirs’own that the title of Train is paramount to that of Martin, they appear not only to have failed to make any defence the suit brought by Martin, hut it does not appear that ever notified the heirs of Hinkson of the pendency of that suit.
An eviction thus obtained, and so uncertain in its extent, foams no excuse for not compelling the heirs of Humble to restore the possession of the land.
The decree must, therefore, be reversed with cost, arid the cause remanded to the court below, and a decree entered, cancelling the contract, and compelling the of Hinkson to pay, respectively, the amount of the personal estate received by them, unless that amount exceed the consideration received by their ancestor for land, and interest thereon, and, in case it does exceed that amount, then to pay ratably in proportion to what has received; but if the personal estate, received by heirs, amounts to less than the consideration and interest, the residue, after paying the amount received, to be paid by the heirs of personal estate, which shall hereafter come to their hands; but the payment must be decreed to be made on the contingency of the heirs of Humble delivering to the heirs of Hinkson, against a day to be named in the decree, the land purchased by their ancestor; and on their failure to deliver the possession against the day, their bill must be dismissed without prejudice to any :¿ction which they may hav* at law on the obligation of Hinkson.